# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MAGGIE LEWIS-BUTLER,<br><br>   Plaintiff<br><br>  v.<br><br>UNITED STATES OF AMERICA,<br><br>   Defendant | Civil Action No. 18-2433 (CKK) |

## MEMORANDUM OPINION
(August 9, 2022)

Plaintiff Maggie Lewis-Butler brings this negligence action against the United States of America under the Federal Torts Claim Act, 28 U.S.C. § 2671, *et seq.* Plaintiff claims that she suffered injuries after she fell into a reflecting pool outside the National Museum of African American History and Culture in Washington, D.C. Plaintiff claims that the United States failed to exercise reasonable care by not installing a guardrail or other barrier, despite being on notice that other visitors had previously fallen into the same reflecting pool. The United States has moved for summary judgment, contending that the International Building Code ("IBC") supplies the standard of care and that its compliance with the applicable IBC provision renders Plaintiff unable to prove any "breach" of a duty of care to support her negligence claim.

Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court concludes that genuine disputes of material fact preclude summary judgment in favor of the United States, and so shall **DENY** its [23] Motion for Summary Judgment.

---

[1] The Court's consideration has focused on the following pleadings and the exhibits attached thereto:
- Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment ("Def.'s Mot."), ECF No. 23-1;
- Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Summary Judgment ("Pl.'s Opp'n"), ECF No. 24;
- Reply in Support of Defendant's Motion for Summary Judgment ("Def.'s Reply"), ECF No. 25;

# I.   BACKGROUND

## A.  Factual Background

In resolving the pending motion for summary judgment, this Court "assume[s] that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."  LCvR 7(h)(1). Therefore, in most instances the Court shall cite to Defendant's Statement of Material Facts Not in Genuine Dispute ("Def.'s Stmt."), ECF No. 23-2, unless Plaintiff objects to relevant aspects of a fact proffered by Defendant.  In such instances, the Court shall also cite to Plaintiff's Statement of Disputed Material Facts, ECF No. 24-1 ("Pl.'s Stmt.") or otherwise indicate that the fact is disputed.  The Court shall also cite directly to the record, where appropriate, to provide additional information.

The Smithsonian Institution's National Museum of African American History and Culture (the "Museum") opened to the public in September 2016.  Def.'s Stmt. ¶ 1.  The Museum is located on the National Mall, near the Washington Monument.  *See id.* ¶ 14.  Outside the south-facing entrance of the Museum is a large pavilion through which visitors pass to reach the building's entrance.  *Id.* ¶ 3.  Adjacent to this area is a reflecting pool—hereinafter referred to as the "Water Feature."  *Id.* ¶ 4.

The side of the Water Feature parallel and closest to the Museum is lined with marble bench seating.  *Id.* ¶ 7.  The sides of the Water Feature perpendicular to the Museum are bordered

---

- Plaintiff's Supplemental Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment ("Pl.'s 1st Suppl. Mem."), ECF No. 26;
- Plaintiff's Second Supplemental Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment ("Pl.'s 2d Suppl. Mem."), ECF No. 27; and
- Defendant's Response to Plaintiff's Second Supplemental Memorandum ("Def.'s Suppl. Resp."), ECF No. 30.

 In an exercise of its discretion, the Court finds that holding oral argument would not be of assistance in rendering a decision. *See* LCvR 7(f).

by a 30-inch strip of granite paver material. *Id.* ¶ 9. Defendant indicates that this "paver" material is "ridged" and "different in both texture and color (a darker granite)" than both the walkway and the interior of the Water Feature. *Id.* ¶ 9; *see* Def.'s Mot. Ex. 4, Declaration of Sarah E. Drumming ("Drumming Decl.") ¶ 4, ECF No. 23-7. Plaintiff does not dispute the "presence and width" of the "paver material," but does dispute Defendant's "characterization of texture and color." Pl.'s Stmt. ¶ 9. However, Plaintiff does not cite any evidence from the record supporting any contrary "characterization of texture and color" than that proffered by Defendant. *Id.* Moreover, the photograph Plaintiff provides in her Opposition *does* show that there is a border around the Water Features that appears to be a lighter shade of gray than the flooring of the surrounding pavilion area. *See* Pl.'s Opp'n at 2. The bottom of the Water Feature is also a lighter shade of gray than the border and surrounding pavilion. *Id.*

The maximum depth of the Water Feature is 24 inches. Def.'s Stmt. ¶ 8. The deepest point of the Water Feature is along the side closest to the Museum (lined by marble benches). *Id.* The pool gradually slopes upward away from the building so that it is "flush with the plaza" on the side farthest from the Museum. Def.'s Stmt. ¶ 8; *see also* Pl.'s Opp'n at 2.

On December 26, 2017, Plaintiff visited the Museum. At approximately 4:49 pm, Plaintiff exited the Museum through the south-facing door. Def.'s Stmt. ¶ 14. As she was walking away from the building, Plaintiff fell into the Water Feature, on one of the sides lined by "paver material" but no other bench or guardrail—that is, one of the sides perpendicular to the Museum. Drumming Decl. ¶ 4. Citing the testimony of its retained expert, Defendant indicates that the "change in level" between the Water Feature and the pavilion at the point where Plaintiff fell is approximately 12 inches. Def.'s Stmt. ¶ 16. Plaintiff does not offer evidence to controvert this point; she merely contends that the depth at the point she fell is a "question of fact" for the jury, as it "appears" to

3

be "in a location where the drop is at least somewhat greater than 12 inches."  Pl.'s Stmt.  ¶ 16.

She does not dispute that the point at which she fell was not the deepest point of the Water Feature

(24 inches).

Defendant has provided to the Court a video of Plaintiff's fall from a security camera.[2]  In

the video, Plaintiff, wearing a red hat, can be seen walking away from the exit of the Museum (on

the left side of the video).  She appears to be wearing a red hat.  She walks along the edge of the

Water Feature perpendicular to the building.  As she passes a group of three people walking

towards the Museum, she falls on her left side into the Water Feature, which had no water in it at

the time.  Other pedestrians nearby rush to assist her, and appear to help her stand up (though the

video clip cuts off as they begin to help her to her feet).

The incident report about Plaintiff's fall is sparse in detail.  It indicates that Plaintiff

"inadvertently fell, injuring [her] left ankle, [and] causing pain to left hip and down."  Pl.'s Opp'n

Ex. 2, Incident Report No. SI-2017-030962 at Smithsonian00002, ECF No. 24-4.  "EMS" was

notified and Plaintiff was "transported to GW" Hospital.  *Id.*

In addition to the evidence of Plaintiff's fall, the record contains ten other incident reports

from the Smithsonian Institution Office of Protective Services, describing, in varying degree of

detail, other falls at or near the Water Feature between the date of the Museum's opening in

September 2016 and the date of Plaintiff's fall in December 2017.[3]  The content of these reports

is briefly summarized below:

---

[2] The United States referred to this video in its motion papers.  *See, e.g.*, Def.'s Stmt. ¶¶ 14, 15. In a minute order dated July 19, 2022, the Court directed the United States to submit this video to the Court by email, which counsel did on July 22, 2022, under filename "Camera 6228 at 1649 to 1650 on 12-26-17.mp4."

[3] Plaintiff initially submitted only four incident reports. *See* Pl.'s Opp'n Exs. 3–6, ECF Nos. 24-5–24-8.  In a supplemental pleading, Plaintiff indicates that, after briefing on Defendant's summary judgment motion was completed, Defendant's counsel discovered six additional incident reports identified during discovery in a separate case involving the same Water Feature. Pl.'s 1st Suppl. Mem. at 1.  Although Plaintiff summarized the contents of

- An incident report dated November 19, 2016 describes an 80-year-old Museum visitor "falling into the fountain outside at the South Door of [the Museum]," noting that the area was "wet" but that the visitor stated that a "'Gust of Wind' caused her to fall in the fountain of water nothing else."  Pl.'s Opp'n Ex. 3, Incident Report No. SI-2016-030210 at Smithsonian00061, ECF No. 24-5.  The visitor refused medical attention.  *Id.*

- An incident report dated December 27, 2016 describes a 70-year-old man "falling in pool space, outside South area."  Pl.'s Opp'n Ex. 4, Incident Report No. SI-2016-033473 at Smithsonian00064, ECF No. 24-6.  This person "complained of dizziness and arm pain" and was transported to a hospital.  *Id*.

- An incident report dated June 15, 2017 describes "an elderly female" stating that "while walking on the southside of [the Museum]," she "tripped over the fountain edge causing her to fall on her hands and knees."  Pl.'s Opp'n Ex. 5, Incident Report No. SI-2017-014678 at Smithsonian00067, ECF No. 24-7.  This person was "taken to the nurses station for observation," but stated she "was fine" and "in no pain." *Id.*

- An incident report dated June 17, 2017 indicates that a woman "slip[ped] and fell into reflecting pool receiving laceration on her right knee and toe."  Incident Report No. SI-2017-017492 at Smithsonian00112, ECF No. 29-1.

- An incident report dated August 5, 2017 indicates that a "visitor in route to the museum fell into the water feature on the south exterior." Incident Report No. SI-2017-019153 at Smithsonian00116, ECF No. 29-2. The visitor reported that he "did not see it and just stepped in, but he was okay." *Id*. at Smithsonian00119.

- An incident report dated August 17, 2017 states only that an "adult female falls inside reflecting pool on south side."  Incident Report No. SI-2017-020284 at Smithsonian00123, ECF No. 29-3.

- An incident report dated August 19, 2017 indicates that a visitor "had fallen into the reflecting pool" located at the south entrance of the building. Incident Report No. SI-2017-020459 at Smithsonian00128, ECF No. 29-4.  The visitor "refused" medical assistance.  *Id.*

- An incident report dated August 24, 2017 describes a male visitor who was "standing on the edge" of the "south side fountain," then "backed up and fell into the fountain."   Pl.'s Opp'n Ex. 6, Incident Report No. SI-2017-020872 at Smithsonian00070, ECF No. 24-8.  The visitor stated that he did not need medical attention and "continued inside the [M]usuem for a tour." *Id.*

---

these six additional incident reports, she did not file them with the Court until the Court directed her to do so in a minute order dated July 19, 2022. *See* Minute Order (July 19, 2022); Pl.'s Resp. to Court Order, ECF No. 29.

- An incident report dated September 14, 2017 describes a woman "standing by the fountain," who reported that she had "step[ped] forward," causing her "to fall down into the water fountain." Incident Report No. SI-2017-022648 at Smithsonian00134, ECF No. 29-5. The report also contains a description of the Museum security officer's review of video from a security camera, which purportedly showed the woman "walking out" of the Museum and "not paying attention," causing her to "[lose] her balance" and fall. *Id.*

- An incident report dated October 9, 2017 indicates that a male visitor "had fallen into the water feature on 14th, Madison Drive SW near staff entrance." Incident Report No. SI-2017-024712 at Smithsonian00138, ECF No. 29-6. The visitor reportedly "admitted to not being aware of his surrounding" and "accidentally walked into the Madison Drive Water Feature." *Id.*

As a result of her fall, Plaintiff suffered "severe tendinopathy and a left Achilles tendon tear requiring surgery on January 15, 2018." Pl.'s Opp'n Ex. 7, Pl.'s Answers to Def.'s Interrogatories at 6, ECF No. 24-9. She seeks $1,000,000 in damages. Compl. at 4.

## B. Procedural Background

Plaintiff filed her Complaint in this action on October 24, 2018. *See* Compl. Therein, Plaintiff asserts a single negligence claim, alleging that the United States "breached the duties" owed to her as someone "lawfully on the Museum's premises at the time of her injury, to keep the premises in a reasonably safe condition, and to warn persons on the premises of any hazardous conditions[.]" *Id.* ¶¶ 15–16. Shortly after Plaintiff filed her complaint, the Court granted a stay due to a lapse in appropriations, which prevented Department of Justice attorneys from working on this matter. *See* Minute Order (Jan. 2, 2019). The United States answered the Complaint on February 6, 2019. Answer, ECF No. 9.

After the conclusion of discovery, Defendant filed its pending Motion for Summary Judgment. *See* Def.'s Mot. After the parties had fully briefed Defendant's motion, Plaintiff filed a [26] Supplemental Memorandum, indicating that Defendant's counsel had identified additional incident reports from the Museum that had not previously been disclosed to Plaintiff. *See* Pl.'s 1st

Suppl. Mem. at 1; *supra* note 3. The Court considers these additional incident reports part of the record in this case and has included them in its discussion *supra* Section I(A).

Upon its review of the parties' briefing, the Court observed that the parties had focused on "the requirements of various building codes," but that Plaintiff had "also appear[ed] to invoke a theory of liability based on Defendant's alleged failure to correct a known hazardous or dangerous condition by providing examples of 'other incidents' involving the same Water Feature." Minute Order (June 29, 2022). However, the Court noted that Plaintiff had not "offer[ed] [any] argument or analysis demonstrating if/how these other incidents support this theory." *Id.* Noting that Defendant had made "a viable argument that Plaintiff ha[d] waived such arguments," the Court permitted Plaintiff to submit a supplemental brief addressing "(1) how these examples of 'other incidents' support a theory of liability based on Defendant's alleged failure to correct a known hazardous or dangerous condition; and (2) how applicable building codes affect the standard of care associated with such a theory of liability." *Id.* Plaintiff filed her responsive supplemental brief on July 13, 2022 and Defendant filed a response on July 27, 2022. *See* Pl.'s 2d Suppl. Mem.; Def.'s Suppl. Resp.

## II.   LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is mandated after adequate time for discovery "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 317 (1986). The mere existence of some factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a "material" fact. Fed. R. Civ. P.

56(a).  Accordingly, '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Nor may summary judgment be avoided based on just any disagreement as to the relevant facts; the dispute must be "genuine," meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant. *Id.*

In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to specific parts of the record—including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence—in support of its position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c)(1).  Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment.  *See Ass'n of Flight Attendants-CWA, AFL-CIO v. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009). Moreover, where a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion."  Fed. R. Civ. P. 56(e).

When faced with a motion for summary judgment, the district court may not make credibility determinations or weigh the evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with all justifiable inferences drawn in her favor. *Liberty Lobby*, 477 U.S. at 255. If material facts are genuinely in dispute, or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is appropriate. *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009). The district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so onesided that one party mut prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-52.  In

this regard, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).

## III.    DISCUSSION

Because Plaintiff brings this negligence action against the United States under the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.*, Defendant's "tort liability 'is determined according to the law of the place where the alleged acts or omissions occurred'—in this case, the District of Columbia." *Lundeberg v. United States*, Civil Action No. 20-2441(JEB), 2022 WL 2340693, at *3 (D.D.C. June 29, 2022) (quoting *Harris v. U.S. Dep't of Veterans Affairs*, 776 F.3d 907, 911 (D.C. Cir. 2015)). To prevail on a negligence claim under D.C. law, Plaintiff must establish "a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, and damage to the interests of the plaintiff, proximately caused by the breach." *WMATA v. Ferguson*, 977 A.2d 375, 377 (D.C. 2009) (quoting *Mixon v. WMATA*, 959 A.2d 55, 58 (D.C. 2008)).

"In the District of Columbia the applicable standard for determining whether an owner or occupier of land has exercised the proper level of care to a person lawfully upon his premises is *reasonable care under all of the circumstances*." *Night & Day Mgmt., LLC v. Butler*, 101 A.3d 1033, 1038 (D.C. 2014) (emphasis added) (quoting *D.C. Hous. Auth. v. Pinkney*, 970 A.2d 854, 866 (D.C. 2009) (additional citation omitted)); *see also Battle v. George Washington Univ.*, 871 F. Supp. 1459, 1461 (D.D.C. 1994) ("[A] landowner has a duty of reasonable care under all circumstances to all persons lawfully upon the landowner's property."). To prove liability "predicated upon the existence of a dangerous condition it is necessary to show that the party against whom negligence is claimed had actual notice of the dangerous condition or that the

condition had existed for such length of time that, in the exercise of reasonable care, its existence should have become known and corrected." *Anderson v. Woodward & Lothrop*, 244 A.2d 918, 918 (D.C. 1968) (per curium).

The parties' summary judgment briefing focuses, in large part, on which building code applied to the design and construction of the Water Feature and whether or not the United States complied with such code. *See, e.g.*, Def.'s Mot. at 10–13; Pl.'s Opp'n at 9–11. Defendant has offered expert testimony of Jonathan Leavitt regarding the requirements of the International Building Code ("IBC"). *See* Def.'s Mot. Ex. 2(B), Expert Report of Jonathan Leavitt ("Leavitt Report"), ECF No. 23-5. Dr. Leavitt opines that, under the applicable provision of the IBC, guardrails are only required along surfaces "that are located more than 30 inches . . . measured vertically to the floor or grade below." Leavitt Report at 1–2 (quoting 2009 IBC § 1013). Accordingly, Dr. Leavitt concludes that guardrails were not required to be installed around the Water Feature because its maximum "change in level" was only 24 inches. *Id.* at 2.

If compliance with the building code alone ended the Court's inquiry, the Court would be inclined to agree with Defendant that Plaintiff has failed to offer testimony or other evidence rebutting that the IBC supplies the pertinent standard and that the Water Feature complied with it. Although Plaintiff offers testimony by her own expert, Gregory A. Harrison, his report only loosely references "prevailing walkway safety practices" and lists several different building codes without identifying specific provisions or requirements pertinent to the structure at issue in this case. *See, e.g.*, Pl.'s Opp'n Ex. 1, Gregory A. Harrison, Expert Report ("Harrison Report") at 8, ECF No. 24-3 ("The subject museum entranceway and premises did *not* comply with the 'spirit and intent'' of the IBC, the local D.C. building codes/LSC or any other standard of care regarding requirements for a safe Means of Egress walkway."). In sum, Dr. Harrison's report makes only "general and

10

conclusory" statements about various building codes—without identifying any specific provision applicable to the Water Feature at issue here.

However, as another court in this jurisdiction recently articulated, "compliance with building codes is *not* determinative of reasonable care." *Lundeberg*, 2022 WL 2340693 at *4 (emphasis added); *see also Boff v. Inter-Continental Hotels Corp.*, No. 17-cv-1523 (DLF), 2018 WL 6329451, at *4 (D.D.C. Dec. 4, 2018) (noting that the "statute or regulation" is "not dispositive"); *Nipon v. Yale Club of N.Y. City*, No. 13 Civ. 1414(HBP), 2014 WL 6466991, at *7 (S.D.N.Y. Nov. 18, 2014) ("Even if the step did comply with the New York City Building Code . . . that fact would not be dispositive of the issue of negligence. Compliance with a building code does not establish due care[.]"). Rather, compliance with a building code is just one "relevant factor" in determining whether Defendant exercised reasonable care under the circumstances. *Lundeberg*, 2022 WL 2340693 at *4; *see also Nipon*, 2014 WL6466991, at *7 ("[C]ompliance is only some evidence of due care."); *cf. Boff*, 2018 WL 6329451, at *4 (explaining that a regulation "informs the standard of care and provides the jury with an objective factor that can support an inference of negligence under the circumstances").

To be sure, the Court in *Lundeberg* observed that the fact that the authors of the "applicable building code have determined that no rail is necessary suggests that 'reasonable care' requires no such thing." 2022 WL 2340693, at *4. However, the Court in *Lundeberg* also relied on facts other than the defendant's compliance with the building code to reach its conclusion that the defendant-museum was entitled to summary judgment because the plaintiff had failed to demonstrate that the United States breached a duty of "reasonable care." In that case, the plaintiff fell off an exhibit display that was on a raised, 6-inch platform and sued the United States under the FTCA, claiming, among other things, that the museum was negligent in failing to install a guardrail. *Id.* at *3. As

11

in this case, the United States in that case "made much of the fact that its exhibit complied with the guardrail requirements of the [IBC]." *Id.* at *4. But the court in that case considered not only the government's compliance with the IBC, but also noted that the exhibit at issue was "clearly" displayed on a "raised surface" which patrons had to access by a ramp marked with different colors and "no[-]skid tape" and that the boundaries of the raised surface were "obvious" as the edge of the platform was "distinguishable" and differently colored from the floor  six inches below." *Id.* at *3. The court also noted that the plaintiff in that case had only offered evidence of one recent prior fall at the museum—which may or may not have occurred at the same exhibit.  *Id.* at *4.

In contrast, in this case, Plaintiff did not walk up an elevated ramp or platform; rather the Water Feature dropped off from the same level as the pavilion.  More importantly, the record here contains examples of ten other incidents involving falls near or into the Water Feature during the 13 months preceding Plaintiff's fall.  *See supra* Section I(A).  From this evidence, a reasonable jury could conclude that the unguarded Water Feature was dangerous and that the United States acted unreasonably by failing to take some precaution or to alert museum patrons of the change in gradation or otherwise prevent them from falling into the Water Feature.  Because resolution of these issues turn on factual questions, summary judgment is not proper.  *See Aqui v. Isaac*, 342 A.2d 370, 371–72 (D.C. 1975) (noting "well settled" ruled that "negligence" is "usually [a] question[ ] of fact"); *King v. Crossland Sav. Bank*, 111 F.3d 251, 259 (2d Cir. 1997) ("[S]ummary judgment is highly unusual in a negligence action where the assessment of reasonableness generally is a factual question to be addressed by the jury.").

In its supplemental brief, the United States argues that Plaintiff's reliance on the incident reports is "insufficient to establish a genuine dispute" that Defendant was "on actual or constructive notice of a hazardous condition."  Def.'s Suppl. Resp. at 3.  The United States argues

that, due to certain factual distinctions between the reports of other incidents and Plaintiff's fall, there is insufficient evidence to show that the Smithsonian was "on notice of an unreasonably dangerous condition on the day that Plaintiff fell in[.]" *Id.* at 4–5. However, taking the evidence in a light most favorable to Plaintiff—as the court must on a defendant's motion for summary judgment—Plaintiff has raised a question of fact as to whether the United States had notice of a dangerous condition based on reports of other incidents. As such, summary judgment for Defendant is not appropriate. *See Ver Standig v. John F. Kennedy Ctr. for the Performing Arts*, No. Civ. A. 02-555 (RJL), 2005 WL 645229, at *2 (D.D.C. Mar. 21, 2005).

## IV.    CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's [23] Motion for Summary Judgment. An appropriate order accompanies this Memorandum Opinion.

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge

Date: August 9, 2022